# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ERICA FORD**                                                                                    **PLAINTIFF**

**V.**                           **CASE NO. 4:24-CV-00420 BSM-JTK**

**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

## RECOMMENDED DISPOSITION

### I.   Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### II.   Introduction:

Plaintiff, Erica Ford ("Ford"), filed applications for disability and disability insurance benefits and supplemental security income on May 12, 2021. (Tr. at 46). In the applications, she alleged that her disability began on August 12, 2019. *Id*. The

applications were denied initially and upon reconsideration. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Ford's claim in a written decision dated October 3, 2023. (Tr. at 46-58). The Appeals Council denied Ford's request for review of the hearing decision on April 8, 2024. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Ford has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   The Commissioner's Decision:

The ALJ found that Ford had not engaged in substantial gainful activity since the alleged onset date of August 12, 2019.[1] (Tr. 49). The ALJ found, at Step Two, that Ford has the following medically determinable impairments: fibromyalgia, psoriatic arthritis, migraines, depression, anxiety, and obesity. *Id*.

The ALJ determined that Ford did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[2] *Id*. Next, the ALJ

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

2

found that Ford had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) can no more than occasionally stoop, kneel, crouch, and crawl; (2) can frequently but not constantly handle and finger with the bilateral upper extremities; (3) cannot tolerate concentrated exposure to temperature extremes, humidity, sunlight, noise above the moderate level, vibrations, and unprotected heights; (4) can understand and remember simple instructions and can sustain attention and concentration to complete simple tasks with customary workplace breaks; (5) can use judgment to make simple work-related decisions; (6) can interact as needed with supervisors and coworkers; (7) can no more than occasionally interact with the general public; and (8) can tolerate occasional changes in the routine work setting. (Tr. at 52).

The ALJ determined that Ford was unable to perform any past relevant work. (Tr. at 56). Relying upon the testimony from a vocational expert ("VE"), the ALJ found that, considering Ford's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Ford could perform. (Tr. at 57). Therefore, the ALJ concluded that Ford was not disabled.[3] (Tr. at 58).

**IV.    Discussion:**

---

[3] The ALJ declined to reopen a prior ALJ's denial of benefits from an earlier period. (Tr. at 46). The ALJ focused on the relevant time-period in this claim, which was August 12, 2019 through October 3, 2023. (Tr. at 58).

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

4

*Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.  Ford's Arguments on Appeal

Ford contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not properly evaluate her "credibility;" (2) the ALJ should have ordered a mental consultative examination; (3) the RFC did not fully incorporate Ford's limitations; and (4) the ALJ did not included all of Ford's limitations in the hypothetical he posed to the VE at Step Five.

Ford claims she is disabled because of symptoms and pain from her severe impairments. However, her treatment for her conditions was conservative, she responded well to treatment, and she could perform a variety of daily activities inconsistent with claims of disability.

#### 1. "Credibility"

Ford claims that the ALJ did not conduct a proper credibility determination.

In 2017, Social Security Ruling 16-3p removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. 2016 SSR LEXIS 4 ("SSR 16-3p"); 20 C.F.R. §§ 404.1527, 404.927. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

The ALJ in this case discussed many of these necessary factors. He noted the need for only conservative treatment for pain, migraines, and mental health symptoms. (Tr. at 51-55). For example, Ford took prescribed medications, had steroid injections, and attended counseling.[4] (Tr. at 55, 760, 776-789, 796-820). Stretching and exercise were recommended. (Tr. at 634-635). Ford did not undergo

---

[4] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

surgery or require inpatient treatment.

Treatment was helpful for Ford. She said symptoms of anxiety and depression improved with medications. (Tr. at 1209-1259, 1284-1291). At the August 2023 hearing, Ford said that she had no panic attacks since starting treatment at Living Hope counseling three years prior. (Tr. at 85-87). Ford testified that medication helped with arthritis.[5] (Tr. at 83-84). She also said that medication helped with migraine headaches, as did exercise. (Tr. at 80-81, 899-908). The ALJ discussed Ford's improvement with treatment.

The ALJ also discussed Ford's ability to perform a variety of daily activities. Indeed, she said she could attend to personal care, help care for her grandmother, do light household chores, prepare meals, shop, do yardwork, and handle her finances.[6] (Tr. at 51, 55, 326-329, 372-374, 650, 1219).

The objective clinic notes in the record showed no gross abnormalities. In December 2021, musculoskeletal exam showed no pain and normal range of motion in her back. (Tr. at 899-902). The prior month Ford also showed no joint tenderness in a musculoskeletal exam. (Tr. at 823). The clinic note said "completely normal

---

[5] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[6] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

MSK exam today." *Id*. A March 2023 note stated that Ford moved well in her extremities with no deformities. (Tr. at 1109-1111). An April 2023 musculoskeletal exam was also normal. (Tr. at 1101-1104).

The ALJ also acknowledged Ford' side effects from medication, and the fact that medication had a sedating effect on her. But at many clinic visits, Ford did not mention side effects; rather she said medication worked well. (Tr. at 51-55, 579-594, 844-854, 1209, 1227-1228, 1287-1291). The ALJ considered Ford's subjective complaints and properly found them inconsistent with the record evidence. (Tr. at 53).

2. Request for consultative examination

Ford asked the ALJ to order a consultative examination for mental issues.[7] But there was no major discrepancy in the medical record for mental impairments that warranted a consultative examination. Treatment for anxiety and depression and panic attacks was conservative. Therapy helped Ford. (Tr. at 85-87, 594, 642). Medication helped with anxiety and depression. (Tr. at 642, 1209, 1219, 1223, 1243, 1259). Ford could do a variety of daily activities.

---

[7] While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). A supplemental examination is required only if there is not sufficient medical evidence in the record to determine whether a claimant is disabled. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

In the decision, the ALJ conducted the required Psychiatric Review Technique contrary to Ford's assertions that he did not.[8] (Tr. at 49-51). And the ALJ accounted for any credible mental limitations in the RFC, in which he prescribed simple work with occasional interaction with the public. (Tr. at 52). This RFC also incorporated portions of the opinions of the state-agency psychiatric experts, who recognized mild-to-moderate mental limitations, which opinions were reflective of the record. (Tr. at 135, 154). The record was fully developed.

3. RFC

The RFC fully incorporated Ford's credible limitations.[9] Treatment was conservative, it improved symptoms, objective findings showed no more than moderate conditions, clinic exams were normal, and Ford could perform a variety of daily activities. Ford has not shown that the RFC outstripped her abilities.

4. Step Five hypotheticals

Ford argues that the hypotheticals posed to the VE at Step Five did not

---

[8] The PRT rates a claimant's degree of functional mental limitation in four broad areas: understanding, remembering, and applying information; interaction with others; concentrating, and persisting and maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a.

[9] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence; in determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

fully incorporate her limitations.[10] She states that the ALJ did not include mental restrictions in the hypothetical. Actually, the ALJ did ask the VE specifically about complexity of tasks, judgment required, interaction with others, and ability to tolerate changes in the workplace. (Tr. at 97-102). Mental limitations were considered. Ford also alleges that she had greater limitations from arthritis, migraines, and fibromyalgia. Ford does not identify any record or doctor's opinion that finds these impairments to be disabling. Treatment was helpful, and no doctor placed any specific work restrictions on Ford.[11]

An ALJ may ask a VE multiple hypotheticals, but then he identifies the one most aligned with the evidence in the record and crafts the RFC from that. The VE's answer that jobs are available based on that particular hypothetical constitutes substantial evidence when the VE offers a proper basis for his conclusions, as she did here. *Id.* The ALJ may dispose of hypotheticals that do not fully capture the claimant's limitations.[12] The ALJ's questioning at Step Five was supported by the evidence in the record as a whole.

---

[10] At Step Five, the burden shifts to the ALJ to show that there are significant numbers of jobs in the national economy that the claimant can perform. He relies upon VE occupational testimony to meet this burden. See *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

[11] The ALJ did list migraine precautions in the RFC. (Tr. at 52).

[12] A hypothetical question need only include those limitations found credible by the ALJ. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

## V. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated Ford's subjective complaints and the record was fully developed. Moreover, the RFC incorporated all of Ford's limitations and the ALJ did not err at Step Five. The finding that Ford was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 21st day of October, 2024.

_____
UNITED STATES MAGISTRATE JUDGE